King CHAPMAN & Broussard Consulting Group, Inc. and William Broussard, Appellants,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Appellee.

No. 01–03–00989–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 6, 2005.

Rehearing Overruled Feb. 16, 2005.

---

Donn C. Fullenweider, Fullenweider & Wardell, L.L.P, Houston, TX, for appellants.

Jeff Nobles, David A. Clark, Beirne Maynard & Parsons, L.L.P., Houston, TX, for appellee.

Panel consists of Justices TAFT, JENNINGS, and BLAND.

## OPINION

JANE BLAND, Justice.

Appellants, King Chapman & Broussard Consulting Group, Inc. (KCB) and William Broussard, sued appellee, National Union Fire Insurance Company of Pittsburgh, PA (National Union), for breaching its defense and indemnification obligations under a directors and officers' (D & O) insurance policy.[1] National Union moved for summary judgment based upon the policy exclusions for contractual liability and prior litigation, and the trial court granted National Union's motion. We hold that the trial court properly rendered summary judgment for National Union based on the policy's exclusions. We therefore affirm.

1. The parties do not distinguish between National Union's defense and indemnification obligations in evaluating coverage under the policy. Thus, we similarly evaluate the two obligations together.

2. The 308th District Court of Harris County issued the divorce decree. Turner sued Broussard in the same court, alleging that jurisdiction was proper because "there are controversies between the parties arising under the divorce agreement which are ripe for adjudication."

## The Facts and Procedural History

### Turner v. Broussard

Broussard is an officer and director of KCB, a management consulting corporation. In 1996, William Broussard and Evelyn Turner divorced. Five years later, in 2001, Turner sued Broussard in his individual capacity, seeking alimony and other contractual rights allegedly accorded to her in the divorce decree.[2] Among other allegations, Turner alleged that the divorce agreement recited: "Broussard covenants that he will be receiving funds for the benefit of Evelyn Grace Turner and as such is acting in a fiduciary capacity with regard to her interests as reflected therein." Based on this provision, Turner alleged Broussard had breached his fiduciary duty to her.

In December 2001, Broussard and Turner settled their dispute relating to the amounts owed under the divorce agreement. In addition to Broussard, the settlement agreement released KCB, its subsidiaries, and its affiliates.

### The D & O Policy

In September 1999, National Union issued a D & O policy to KCB that insures KCB's directors, officers, and employees against losses for "wrongful acts" committed "in their capacities" as directors, officers, or employees.[3] The policy excludes coverage for claims that allege contractual

3. National Union issued the D & O policy number 859–52–97, which ran from September 9, 1999 to January 5, 2001. National Union renewed this policy with number 872–37–61, which ran from January 5, 2001 to January 5, 2002. Turner filed her suit on January 30, 2001; therefore, the second policy is applicable. The relevant provisions of both D & O policies are identical.

liability or that arise out of prior litigation. Under exclusion (f), National Union is not liable for claims:

> alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or any other Insured under any express contract or agreement, [except for employment practice claims].

Under exclusion (h), National Union is not liable for claims:

> alleging, arising out of, based upon or attributable to as of the Continuity Date, any pending or prior litigation . . .

The "Continuity Date" to which the prior litigation exclusion refers in this case is the policy inception date of September 9, 1999.

*Broussard and KCB v. National Union*

In February 2001, Broussard and KCB demanded that National Union provide coverage for Turner's lawsuit against Broussard under KCB's D & O policy. National Union denied coverage. In July 2002, after Broussard and Turner settled their dispute relating to the divorce agreement, Broussard and KCB together sued National Union in this case, seeking reimbursement for defense and settlement costs incurred in the Turner lawsuit and for National Union's breach of the duty of good faith and fair dealing in its denial of coverage and a defense of the Turner lawsuit. Broussard and KCB sought damages of $783,000, consisting of: $100,000 for Broussard's attorney's fees, $100,000 for KCB's attorney's fees, $183,000 for the present value of the agreed judgment in the divorce case, $25,000 for reproduction and photo copying costs, and $375,000 in loss to the company for time spent on the Turner matter by Broussard and others.

National Union moved for summary judgment on three grounds: (1) the allegations in Turner's lawsuit are not within the D & O policy's scope of coverage, because Turner did not allege wrongful acts committed in Broussard's capacity as a director or an officer; (2) the D & O policy excludes Broussard and KCB's claims because the Turner lawsuit arises out of prior litigation; and (3) the D & O policy excludes Broussard and KCB's claims because Turner's allegations arise out of an alleged liability under an "express contract," i.e., the divorce agreement. The trial court granted National Union's motion for summary judgment, but later set it aside.

National Union then filed a supplemental motion for summary judgment, in which it dropped the first ground and asserted only the two policy exclusions as grounds. Broussard and KCB presented evidence in opposition to the motion, including affidavits by Broussard, Don Peterson, Thomas Oldham, and Donn Fullenweider.[4] National Union objected to these, save Peterson's original affidavit.[5] The trial court rendered summary judgment in favor of National Union, ordering that Broussard and KCB take nothing. The summary judgment order does not expressly rule on National Union's objections, nor does it state the specific ground upon which the trial court granted the motion. Broussard and KCB appeal the

---

4. Peterson is the chief financial officer of KCB; Oldham is a professor of law at the University of Houston Law Center; and Fullenweider is the attorney for KCB and Broussard.

5. In opposition to National Union's original motion for summary judgment, Broussard and KCB filed affidavits by Broussard, Peterson, and Oldham. In opposition to National Union's supplemental motion for summary judgment, Broussard and KCB filed Broussard's original affidavit and a revised affidavit, Oldham's original affidavit, Fullenweider's revised affidavit, and Peterson's revised affidavit.

trial court's summary judgment. National Union raises a cross-issue, asking that we affirm on the alternative basis that the D & O policy does not afford coverage.

## Standard of Review

We review a summary judgment under a de novo standard. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). We view all evidence in a light favorable to the nonmovant, and we indulge every reasonable inference in the nonmovant's favor. *Id.* For a traditional summary judgment, as here, the moving party must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). If, as here, the trial court's order does not specify the grounds for its summary judgment, then we affirm should any of the theories presented to the trial court and preserved for appellate review have merit. *See Knott*, 128 S.W.3d at 216.

## The Eight Corners Rule

■■■ Under the eight corners rule, the allegations in the pleadings and the language of the insurance policy determine an insurer's duty to defend. *National Union Fire Ins. Co. of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997). We view the factual allegations in the petition liberally, resolving any doubt in favor of the insured. *McCarthy Bros. Co. v. Cont'l Lloyds Ins. Co.*, 7 S.W.3d 725, 728 (Tex.App.-Austin 1999, no pet.). An insurer must defend a suit if the petition alleges facts within the scope of coverage. *Merchants Fast Motor Lines*, 939 S.W.2d at 141. "The duty to defend is not affected by facts ascertained before suit, developed in the process of litigation, or by the ultimate outcome of the suit." *American Alliance Ins. v. Frito–Lay, Inc.*, 788 S.W.2d 152, 154 (Tex.

App.-Dallas 1990, writ dism'd); *see also Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex.App.-Houston [14th Dist.] 1993, writ denied) ("It is not the cause of action alleged that determines coverage but the *facts* giving rise to the alleged actionable conduct.") (emphasis in original).

■■■ In general, a coverage determination does not consider matters outside the policy and the pleadings. *Capital Bank v. Commonwealth Land Title Ins. Co.*, 861 S.W.2d 84, 88 (Tex.App.-Houston [1st Dist.] 1993, no writ). We will not read facts into the pleadings, nor will we "imagine factual scenarios which might trigger coverage." *Merchants Fast Motor Lines*, 939 S.W.2d at 142. We therefore examine whether the allegations in Turner's petition together with the D & O policy language impose a duty upon National Union to defend and indemnify Broussard and KCB in the Turner lawsuit.

## The Petition

In her petition, Turner alleges as follows:

(1) *Constructive Trustee and Fiduciary Duty Obligations.* In paragraphs 9–11, Turner alleges that Broussard breached his constructive trustee and fiduciary duty obligations, established under section 7.16 of the divorce agreement. Section 7.16 provides that Broussard is a constructive trustee for any property or monies he receives that are to be awarded to Turner under the agreement and "as such is acting in a fiduciary capacity with regard to her interests." Turner also alleges that Broussard is "guilty of fraud in connection with the divorce agreement and is furthermore liable for punitive damages."

(2) *Breach of Contractual Alimony Obligations.* In paragraphs 12–15, Turner alleges that Broussard breached sections 3.02 and 3.03 of the divorce agreement, which require him to pay Turner $6,600 per month as contractual alimony and to prepay Turner a portion of the alimony. Turner alleges that failure to pay the alimony payments "as the parties agreed is a breach of contract."

(3) *1992 Personal Billings.* In paragraphs 16–17, Turner alleges that Broussard failed to pay Turner 50% of all payments received by Broussard arising from his 1992 "Personal Billings" as required by schedule 2, section 11 of the divorce agreement.

(4) *KCB & G Outplacement Company.* In paragraphs 18–21, Turner alleges that Broussard failed to pay Turner 50% of all payments he received as a result of the sale of a certain entity, KCB & G, to AIM, Inc., as required by section 7, schedule 2 of the divorce agreement. She complains of accountings prepared by Peterson, because Peterson owes "allegiance to Broussard and the corporations in which Broussard owns an interest."

(5) *Improper Income Deductions.* In paragraphs 22–24, Turner alleges that Broussard made improper income deductions in calculating his alimony prepayment obligations under section 3.03 of the divorce agreement.

(6) *Insurance Policy.* In paragraphs 25–26, Turner alleges that Broussard failed to maintain a life insurance policy naming Turner as an irrevocable beneficiary, as required by the divorce agreement.

(7) *Industrial Transformation, Ltd. Union/Labor Management Initiative Payments.* In paragraphs 27–31, Turner alleges that Broussard failed to pay Turner 50% of all pre-tax revenues paid directly or indirectly to Broussard from KCB's union/labor management initiative conducted through Industrial Transformation, Ltd., as required by section 10, schedule 2 of the divorce agreement.

(8) *KCB Holding Company Stock.* In paragraphs 32–34, Turner alleges that she is entitled to the stock under section 2.02 of the divorce agreement, which provides that any community property omitted from the schedule to the divorce agreement shall be awarded to the party not in possession. The stock of KCB Holding Company was omitted from the schedules, and Broussard was in possession of such property.

(9) *Tekniko License Debt Payment.* Broussard received a distribution in connection with a Tekniko License, based on a separate debt that existed prior to the divorce agreement. In paragraphs 35–37, Turner alleges that the prior obligation was community property; therefore, she is entitled to payment under section 2.02 of the divorce agreement.

(10) *Concealment of Bonus Rights.* In paragraphs 38–41, Turner alleges that she is entitled to bonus rights under section 2.02 of the divorce agreement. Turner alleges that a unanimous consent of the board of directors of KCB Holding Co. deferred Broussard's bonus rights for 1993 and 1994, and Broussard omitted the bonus rights from the schedule of the divorce agreement.

(11) *Breach of Fiduciary Duty/Constructive Fraud.* In paragraph 42, Turner alleges, "Broussard, as Tur-

ner's former spouse, becomes partner and pursuant to the terms of the Divorce Agreement had a fiduciary relationship with and a fiduciary duty to Turner." Turner claimed that Broussard violated these duties by forgiving KCB's obligations to pay 1992 personal billings, of which Turner was to receive 50%, and voting/assisting in the alleged dissolution of Industrial Transformation, Ltd.

Under the eight corners rule, we compare these allegations with the relevant D & O policy provisions to determine coverage.

## The Policy Exclusions

■ An insurer has no duty to defend if a petition against an insured alleges facts excluded by the policy. *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex.1982). National Union moved for summary judgment on the basis that the D & O policy excludes coverage for claims "alleging, arising out of, based upon or attributable to" an express contract or prior litigation. Broussard and KCB respond that these exclusions do not apply, because Turner's allegations pertain at least in part to Broussard's allegiance and duty to KCB as a director and officer, and not to the Turner divorce litigation or the divorce decree contract settling that litigation.

*Express Contract*

■ Exclusion (f) of the D & O policy provides that National Union is not liable for claims "alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or any other Insured under any express

contract or agreement." National Union contends that the D & O policy excludes Broussard and KCB's claims because Turner's allegations arose out of an alleged liability under an "express contract"—the divorce agreement. Broussard and KCB respond that Turner's petition "is riddled with allegations of malfeasance by corporate officers" and that her allegations "directly concern Broussard's conduct as an officer-not any alleged failure to abide by the divorce agreement."

Turner's suit against Broussard alleges that Broussard breached his obligations under the divorce settlement agreement by failing to pay alimony and other amounts due under the agreement. A review of Turner's amended petition, as set forth above, demonstrates that each of Turner's allegations arises out of, is based upon, and can be attributed to specific sections of the divorce decree. For example, Turner did not allege that Broussard breached any fiduciary duty in his capacity as a corporate officer or director—and the parties agree that Turner owned no stock in KCB and was not a shareholder.[6] Rather, Turner alleged that Broussard breached his constructive trustee and fiduciary duty obligations expressly established under section 7.16 of the divorce agreement. Broussard and KCB respond that a breach of fiduciary duty claim sounds in tort. In this case, however, the only breach of duty Turner alleges is one expressly created by the settlement contract. Such a claim "arises out of" and is "attributable to" the alleged breach of the divorce agreement.

Broussard and KCB further respond that certain of the alleged breaches of contract necessarily required Broussard to

---

6. Broussard and KCB contend that Turner was a "putative" shareholder. Turner, however, never characterizes her claims against Broussard as shareholder claims—putative or

otherwise—nor does she allege that her claims against Broussard arise out of any obligation separate from the divorce settlement agreement.

undertake acts in his capacity as an officer of KCB. In particular, they point to paragraph 42 of Turner's petition, in which she alleges that Broussard breached the divorce agreement when he voted or assisted in the dissolution of Industrial Transformation, Ltd. Assuming that such an allegation falls within the scope of coverage under the D & O policy, it nevertheless also falls within the policy's contract exclusion, because it plainly arises out of Broussard's contractual obligation to Turner.

In addition, the jurisdiction and venue paragraphs in Turner's petition expressly refer to the divorce agreement. Turner alleges that jurisdiction is proper in the 308th District Family Court because the parties divorced in that court and "there are controversies between the parties arising under the divorce agreement which are ripe for adjudication. [Broussard] breached this agreement." Turner's venue paragraph alleges that Broussard "breached the agreement," causing damage in Harris County, Texas.

Under the eight corners rule, we evaluate whether National Union's duty to defend exists based on the allegations in Turner's petition and the D & O policy. *See Merchants Fast Motor Lines*, 939 S.W.2d at 142. Turner sued Broussard individually, and each of her allegations relate to Broussard's contractual liability under the divorce agreement. We hold that Turner's claims "allege, arise out of, are based upon or attributable to" the divorce agreement; therefore, exclusion (f) precludes coverage under the express contract exclusion, and the trial court properly rendered summary judgment based on this exclusion.

*Prior Litigation*

■ Exclusion (h) of the D & O policy provides that National Union is not liable for claims "alleging, arising out of, based upon or attributable to as of the Continuity Date [September 9, 1999], any pending or prior litigation." Broussard and Turner divorced in 1996; thus, the divorce litigation occurred before the 1999 continuity date. Turner sued Broussard in 2001, alleging that Broussard failed to pay alimony or other amounts due under their divorce agreement. After reviewing the allegations in Turner's amended petition, we conclude that each of Turner's allegations arises out of specific sections of the 1996 divorce decree. The prior litigation exclusion therefore precludes coverage.

Broussard and KCB rely on *Whitworth v. Chiles Offshore Corp.* for the proposition that the prior litigation exclusion in the D & O policy is ambiguous. No. 92–1504, 1993 WL 177186, at *1 (E.D.La. May 14, 1993). In *Whitworth*, the litigation alleged to trigger coverage had been pending before the insurance policy's inception date. *Id.* The plaintiff in the underlying litigation, however, did not name the officers and directors as defendants until after the inception date. *Id. Whitworth* is distinguishable, because Broussard was the sole defendant in the 1996 Turner divorce litigation, and it concluded before the D & O's policy's 1999 continuity date. Thus, no interpretive issue as to whether the divorce litigation was "prior" to the inception date arises. The prior litigation exclusion is not ambiguous in this case, and the trial court properly rendered summary judgment for National Union based on this exclusion.

**The Summary Judgment Affidavits**

■ Broussard and KCB urge this court to consider extrinsic evidence in addition to the petition and policy. For example, they point to Turner's discovery responses, in which she names KCB as "a potential party" to the suit. Broussard and KCB also rely on the affidavits they filed in opposition to National Union's mo-

tion for summary judgment by Broussard, Peterson, Oldham, and Fullenweider. Broussard and KCB contend that these affidavits raise a genuine issue of material fact as to whether Broussard acted solely as Turner's ex-husband or at least in part as a KCB officer/director.

Broussard and his co-officer, Peterson, offer affidavits that interpret the factual allegations in Turner's pleadings as ones involving Broussard's role as an officer and a director. Broussard's original affidavit avers that "all of [Turner's] claims for future contingency payments through me for her shares in KCB came down to a claim that I, acting as an officer and director, took actions which prevented her from receiving her interests." Broussard's amended affidavit characterizes Turner's suit as one alleging that Broussard "defrauded [Turner] out of money she was owed by abusing my power as a corporate officer and/or director." In other words, Turner's allegations concerned business decisions requiring corporate approval. In his supplemental affidavit, Peterson, the Chief Financial Officer of KCB, similarly states that Turner's allegations refer to decisions by KCB officers and/or directions to dissolve Industrial Transformation, Ltd. and to defer certain bonuses and the AIM sale.

Broussard also offers an affidavit that interprets the legal character of the Turner lawsuit. Thomas Oldham, a professor of law at the University of Houston Law Center, opines in his affidavit that Turner's suit "would have to be sounded in tort for breach of fiduciary duty based on Broussard's being a shareholder, officer, and director of KCB. There was not a claim for breach of contract against him for failure to perform a specific provision of the [divorce agreement] because he didn't breach that agreement."

Broussard urges that these affidavits create a fact issue as to coverage, because they cast a different light on the allegations in the petition. The Texas Supreme Court, however, has never recognized an exception to the strict eight corners rule so as to allow courts to examine extrinsic evidence in determining an insurer's duty to defend. *Landmark Chevrolet Corp. v. Univ. Underwriters Ins. Co.*, 121 S.W.3d 886, 890 (Tex.App.-Houston [1st Dist.] 2003, pet. filed). Moreover, even the Texas appellate courts that have allowed such evidence have done so in the most limited of circumstances. For example, in *State Farm Fire & Cas. Co. v. Wade*, the Corpus Christi Court of Appeals considered extrinsic evidence about the use of a boat that was the subject of the policy, because the court could not determine whether the personal boat owner's private liability policy provided coverage. 827 S.W.2d 448, 453 (Tex.App.-Corpus Christi 1992, writ denied). The court held that the boat's use at the time of the accident—whether commercial or private—was an essential fact of coverage that did not question the truth or falsity of any facts alleged in the underlying petition. *Id.* Here, the Turner petition specifically alleges acts that give rise to liability under the settlement agreement-which expressly determine that coverage is excluded.

For further support, Broussard and KCB cite to *Utica Lloyd's of Texas v. Sitech Engineering Corp.*, in which the Texarkana Court of Appeals, citing to the *Wade* exception, stated that a court may consider extrinsic evidence if the policy terms are ambiguous, or the petition does not contain factual allegations sufficient to enable the court to determine whether the claims are within the policy coverage. 38 S.W.3d 260, 263 (Tex.App.-Texarkana 2001, no pet.). The *Utica* court, however, held that the trial court had erred in considering extrinsic evidence in that case, as

neither of the exceptions applied. *Id.* at 263–64. Similarly, in this case, we find the factual allegations in the Turner petition sufficient to determine whether the prior litigation and breach of contract exclusions apply.

 Finally, our court has rejected the *Wade* exception and applies a strict eight corners rule. *Landmark Chevrolet,* 121 S.W.3d at 890–91; *Tri–Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co.,* 981 S.W.2d 861, 863–64 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). We observe that the Fifth Circuit also recently made an *Erie* guess [7] that the Texas Supreme Court does not recognize any exception to the strict eight corners rule:

> In light of the Texas appellate courts' unwavering unwillingness to apply and recent repudiations of the *Wade* type of exception, this Court makes its *Erie* guess that the current Texas Supreme Court would not recognize any exception to the strict eight corners rule. That is, if the four corners of the petition allege facts stating a cause of action which potentially falls within the four corners of the policy's scope of coverage, resolving all doubts in favor of the insured, the insurer has a duty to defend. If all the facts alleged in the underlying petition fall outside the scope of coverage, then there is no duty to defend. However, in the unlikely situation that the Texas Supreme Court were to recognize an exception to the strict eight corners rule, we conclude any exception would only apply in very limited circumstances: when it is initially impossible to discern whether coverage is potentially implicated and when the extrinsic evidence goes solely to a fundamental issue of coverage

which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case.

*Northfield Ins. Co. v. Loving Home Care, Inc.,* 363 F.3d 523, 531 (5th Cir.2004).

We follow our precedent and decline to apply an exception to the eight corners rule. *See Landmark Chevrolet,* 121 S.W.3d at 891; *Tri–Coastal,* 981 S.W.2d at 863–64. We therefore do not consider Broussard's extrinsic evidence about the pleadings of the underlying case. *See Landmark Chevrolet,* 121 S.W.3d at 891; *Tri–Coastal,* 981 S.W.2d at 863–64.

### Cross–Issue: Scope of Coverage

In its cross-issue, National Union contends that the trial court should have granted National Union's original summary judgment on its alternative ground that Broussard and KCB's claims are not within the scope of the coverage under the D & O policy. We hold that the trial court properly granted National Union's supplemental motion for summary judgment based on the policy exclusions. We therefore need not address whether Turner's petition alleges wrongful acts that afford D & O coverage under the policy under circumstances in which the two exclusions do not apply.

### Conclusion

Under the eight corners rule, National Union's duty to defend depends on the allegations in Turner's petition and the scope of coverage established in the D & O policy. We hold that trial court properly granted National Union's motion for summary judgment based on the contractual liability and prior litigation policy exclu-

---

7. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Transcontinental Gas Pipe Line Corp. v. Transp. Ins. Co.,* 953 F.2d 985, 988 (5th Cir.1992) ("[I]t is the duty of the federal court to determine as best it can, what the highest court of the state would decide.").

sions. We therefore affirm the judgment of the trial court.