# United States Court of Appeals
# for the Fifth Circuit

—————————

No. 22-50933

—————————

United States Court of Appeals
Fifth Circuit

**FILED**
March 21, 2024

Lyle W. Cayce
Clerk

SXSW, L.L.C.,

*Plaintiff—Appellant*,

*versus*

Federal Insurance Company,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-900

———————————————————————

Before Willett, Engelhardt, and Oldham, *Circuit Judges*.

Andrew S. Oldham, *Circuit Judge*:[*]

This appeal involves an insurance coverage dispute between SXSW, LLC and Federal Insurance Company. The district court granted summary judgment to the insurance company. We REVERSE.

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-50933

I.

A.

SXSW, LLC ("SXSW") hosts a yearly festival in Austin, Texas known as "South by Southwest." In 2020, however, the City of Austin cancelled the festival because of the COVID-19 pandemic.

Some ticket holders asked SXSW to refund their purchases. SXSW declined, citing a no-refund clause in the terms and conditions of its ticket agreement.[1] SXSW instead offered ticket deferrals and half-price tickets to future festivals. Many ticket holders accepted this offer. But others refused.

On April 24, 2020, two ticket holders (the "Bromley Plaintiffs") filed a class action lawsuit against SXSW "on behalf of themselves and all other persons who purchased wristbands, tickets, passes, and badges to the 2020 South by Southwest Festival." The Bromley Plaintiffs asserted claims for breach of contract, unjust enrichment, and conversion (the "Bromley Complaint"). In February 2022, the case settled. The class members who had accepted SXSW's prior deferral offer could keep those benefits and receive an additional $30. Everyone else could either accept that deferral offer or receive 40% of the cost of their 2020 tickets. SXSW paid more than $1 million to settle the Bromley litigation: $290,402 to class members, $4,000 to class representatives, $400,000 to class counsel, $183,327.75 to its attorneys, and $144,630.18 for claims administration.

---

[1] The clause stated: "SXSW may, in its sole discretion and at any time determined by SXSW, cancel, revoke, or refuse . . . Credentials, purchases, and/or hotel reservations made through SXSW. . . . SXSW does not issue refunds under any circumstances. Any and all payments made to SXSW are not refundable for any reason, including, without limitation, failure to use Credentials due to illness, acts of God, travel-related problems, acts of terrorism, loss of employment and/or duplicate purchases."

## B.

SXSW then attempted to shift that cost onto its insurance carrier. SXSW had an insurance policy (hereafter "Policy") from Federal Insurance Company ("Federal") with a policy period from August 17, 2019, to August 17, 2020. On April 27, 2020, SXSW emailed Federal a copy of the Bromley Complaint, which had been filed but not yet served on SXSW. On May 18, 2020, Federal notified SXSW that it would neither defend nor indemnify SXSW for the Bromley Complaint.

On October 6, 2021, and in the midst of the Bromley litigation, SXSW sued Federal in federal court. SXSW alleged breach of contract, breach of implied covenant of good faith and fair dealing, and violations of the Texas Insurance Code. It also sought a declaratory judgment that Federal owed SXSW duties to defend and indemnify the Bromley suit.

SXSW moved for partial summary judgment, arguing that there was no genuine issue of material fact as to Federal's duty to defend. Federal moved for summary judgment on all of SXSW's claims due to lack of coverage. The magistrate concluded that SXSW sought a covered loss and timely tendered the Bromley Complaint to Federal, but then held that the Policy's exclusions excused Federal from defending or covering the Bromley litigation. The district court agreed and entered summary judgment for Federal. SXSW timely appealed.

## C.

Prior to oral argument in this first appeal, we noticed an apparent jurisdictional defect. In its complaint, SXSW alleged that the district court had diversity jurisdiction because the parties were completely diverse and the amount in controversy exceeded $75,000. *See* 28 U.S.C. § 1332(a)(1). But the complaint appeared to confuse LLC citizenship with corporate citizenship. Instead of alleging the citizenship of all of its members, *see Harvey v. Grey*

No. 22-50933

*Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008), SXSW only alleged its state of registration and principal place of business. *Cf.* 28 U.S.C. § 1332(c)(1). Before this court, SXSW's opening brief discussed the citizenship of some of its members. Yet even that discussion was inadequate because it failed to distinguish between LLC ownership and membership or individual residence and citizenship. *Cf. Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (holding that parties must make "clear, distinct, and precise affirmative jurisdictional allegations"). Accordingly, we asked the parties to discuss this issue at oral argument.

At oral argument, counsel for SXSW confessed error and asked the court's leave to amend the initial complaint. *See* 28 U.S.C. § 1653. But § 1653 is only helpful where there is evidence of jurisdiction in the record. *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919–20 (5th Cir. 2001); *see also MidCap Media Fin., LLC v. Pathway Data, Inc.*, 929 F.3d 310, 315 (5th Cir. 2019). Because there was no evidence of complete diversity in the record, we remanded for the district court to determine whether jurisdiction exists. *See SXSW, LLC v. Fed. Ins. Co.*, 83 F.4th 405, 409 (5th Cir. 2023). We excused the need to file a new notice of appeal and retained jurisdiction over a future appeal. *Ibid.*

On remand, the magistrate ordered SXSW to file a brief addressing the jurisdictional issue. SXSW moved for leave to file an amended complaint with additional jurisdictional allegations. The district court granted that motion and ordered the clerk to supplement the appellate record with the amended complaint. The case then returned to this panel.

Having reviewed the amended complaint, we are now assured of our jurisdiction. As a corporation, Federal is a citizen of Indiana (its State of incorporation) and New Jersey (its principal place of business). *See* 28 U.S.C. § 1332(c)(1). As a limited liability company, SXSW's citizenship is

No. 22-50933

determined by that of its members. *See Harvey*, 542 F.3d at 1080. According to the amended complaint, SXSW's members make it a citizen of California, Connecticut, Delaware, Florida, Massachusetts, Michigan, Nevada, New York, North Carolina, Pennsylvania, Texas, Virginia, Switzerland, and the United Kingdom. Accordingly, there is complete diversity between the two parties. Since the amount in controversy is more than $75,000, the court has jurisdiction under 28 U.S.C. §§ 1332(c)(1) and 1291.[2]

## II.

We review the district court's grant of summary judgment de novo. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). The parties agree that Texas state law applies.

Under Texas law, an insurer's duty to defend is determined by the "eight-corners rule." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). An insurer has a duty to defend if the four corners of the complaint against the insured allege facts that, taken as true, assert a claim covered by the four corners of the insurance

---

[2] Because the additional evidence of jurisdiction did not defeat complete diversity, some might wonder why it was worth it to remand. The answer is found in Appendix A to SXSW's amended complaint. *See* ROA.1969–73 ("Members of Plaintiff/Appellant SXSW, LLC, as of October 6, 2021"). Appendix A lists close to 100 discrete entities or individuals, who are collectively citizens of 12 American States and two foreign countries. Several of the entities have multiple layers of membership. For example, PME Holdings LLC has *eight* layers of membership. SXSW's membership structure also has various nested members. For example, SBT Investors, LLC is a member of SBT Media Holdings, LLC, which is a member of Eldridge Media Holdings, LLC. But SBT Investors, LLC, which has many members, is also a member of Eldridge Industries, LLC, which is a member of GEC Finance, LLC , which is a member of Ridge Media Holdings, LLC – DE LLC, which is a member of Eldridge Media Holdings, LLC. Such nesting further complicates the membership structure of SXSW. It shows the perilousness of overlooking a party's defective jurisdictional allegations. And it should prove to litigants and district courts why diversity cases involving LLC parties merit close jurisdictional scrutiny.

policy. *See ibid.* The court must consider each legal claim alleged against the insured, *see, e.g.*, *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126–27 (Tex. 2010), and determine coverage by looking at the factual allegations supporting each claim. *Merchs. Fast Motor Lines*, 939 S.W.2d at 141. "If a complaint potentially includes a covered claim, the insurer must defend the entire suit." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008).

"Initially, the insured has the burden of establishing coverage under the terms of the policy." *Gilbert Tex. Const.*, 327 S.W.3d at 124 (citation omitted). The burden then shifts to the insurer to prove that an exclusion precludes coverage. *See ibid.*; *see also* TEX. INS. CODE ANN. § 554.002 (West 2005).

Because insurance policies are contracts, Texas courts "interpret and enforce them according to settled rules of construction. Most importantly, we must give the policy's words their plain meaning . . . ." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008) (citation omitted). Ambiguous terms in insurance policies must be interpreted in favor of coverage. *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012) (citations omitted). When the ambiguous term is a policy exclusion, courts adopt the insured's reasonable interpretation, even if the insurer's interpretation "appears to be more reasonable or a more accurate reflection of the parties' intent." *Gilbert Tex. Const.*, 327 S.W.3d at 133 (quotation omitted).

## III.

We start with SXSW's burden to establish coverage. *See id.* at 124. The Policy provides SXSW with "Entity Liability Coverage." In relevant part, the Policy provides:

Insuring Clause (C): Entity Liability Coverage

> (C) The Company shall pay, on behalf of an Organization, Loss on account of a Claim first made against the Organization during the Policy Period, or the Extended Reporting Period if applicable.

SXSW contends, and Federal does not meaningfully contest, that the Bromley litigation costs constitute a "Loss" covered by this provision.[3]

The dispute in this case is whether Federal carried its burden to show that other provisions of the Policy exclude coverage. Again, we agree with SXSW. We (A) hold that the Contract Exclusion does not preclude coverage, (B) hold that the Professional Services Exclusion does not preclude coverage, and (C) reject the remainder of Federal's arguments against coverage.

### A.

The Policy contains a list of exclusions applicable to the Entity Liability Coverage. The Contract Exclusion states as follows:

> The Company shall not be liable for Loss on account of any Claim against an Organization: . . . based upon, arising from or in consequence of any liability in connection with any oral or written contract or agreement to which an Organization is a party . . . .

Federal argues that this exclusion precludes coverage for SXSW's loss related to the Bromley Complaint. We disagree.

To explain why, it is useful to disentangle the parties' differing interpretations of the Contract Exclusion. Begin with Federal's

---

[3] Federal contends that SXSW did not incur a "loss" as that term is defined elsewhere in the Policy. The Policy defines Loss to include "the amount which an insured becomes legally obligated to pay as a result of any Claim, including: . . . compensatory damages; . . . judgments, including pre-judgment and post-judgment interest; . . . and Defense Costs." The Bromley Plaintiffs asked for actual damages and/or restitution, interest, and attorneys' fees and costs. Clearly, SXSW sought a covered loss.

interpretation. SXSW contracted with the ticket purchasers who later sued in the Bromley class action. As Federal sees it, those contracts were the but-for cause of the litigation liability that SXSW later resolved by settling the class action. *See Utica Nat. Ins. Co. of Texas v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (interpreting the phrase "arise out of" to encompass but-for causation). Without the ticket purchase contracts, no purchaser litigation would have ever occurred. Since "the entire [Bromley Complaint] has a causal and incidental connection to [the purchase contracts]," Red Br. 11, Federal believes it can deny coverage under the Contract Exclusion.

SXSW proffers a different interpretation, focusing on the phrase "liability in connection with any . . . contract.". In SXSW's view, the question is not whether the contracts were the but-for cause of the Bromley Complaint, but whether the claims in the complaint alleged liability under a contractual obligation. Such a claim could include breach of contract, which the Bromley Plaintiffs asserted in the complaint. But the Bromley Plaintiffs' claims were not limited to breach-of-contract; they *also* brought claims for unjust enrichment and conversion—two state law causes of action that do not arise from contracts. *See City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 731 (Tex. App.—Fort Worth 2008) ("Generally speaking, however, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory, such as unjust enrichment."); Restatement (Second) of Torts § 222A (1965) (discussing conversion). Because "those claims alleged SXSW's liability wholly *outside* any contract or agreement," Blue Br. 25, the insured contends Federal cannot rely on the Contract Exclusion.

We need not consider Federal's understanding of the exclusion because SXSW's reading of it is plainly reasonable. *Gilbert Tex. Const.*, 327 S.W.3d at 133 (insured's reasonable reading of exclusion controls, even if insurance company's reading is better). Take, for example, *Admiral Insurance*

No. 22-50933

*Company v. Rio Grande Heart Specialists of South Texas, Inc.*, 64 S.W.3d 497 (Tex. App.—Corpus Christi-Edinburg 2001). In that case, the state court considered a similarly worded contract exclusion, which precluded coverage for any "claim for liability assumed by [the insured] under any contract or agreement, either oral or written." *Id.* at 502 (quotation omitted). The court held the exclusion did not bar coverage for a suit alleging breach of a duty of good faith because the duty of good faith "would have arisen even absent a contract between [the parties]." *Ibid.*; *cf. Carolina Cas. Ins. Co. v. Sowell*, 603 F. Supp. 2d 914, 926–28 (N.D. Tex. 2009) ("The Contract Exclusion bars coverage of the claims between DPL and defendants, not because *their relationship* arose out of a lease contract, but because the *claims* DPL asserts arise out of the lease contract.") (emphasis in original).

So too here. The Bromley Plaintiffs could have asserted their claims of unjust enrichment and conversion even absent a contract between them and SXSW. *Cf. Windermere Oaks Water Supply Corp. v. Allied World Specialty Ins. Co.*, 67 F.4th 672, 675 (5th Cir. 2023) ("These are claims that are established at law—not by contract—and that could stand alone even if no contract ever existed." (quotation marks and citation omitted)). That means at least one claim in the Bromley Complaint survives the Contract Exclusion.

*Chapman v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania*, 171 S.W.3d 222 (Tex. App.—Houston [1st Dist.] 2005), is not to the contrary. In that case, the court held a contract exclusion excused the insurance company from covering a breach-of-fiduciary claim. *See id.* at 228–29. And a breach of fiduciary duty sounds in tort, not contract, so it could theoretically arise even absent a contract. *See id.* at 228. But the breach-of-fiduciary-duty claim in *Chapman* was based on a specific duty "expressly created by the . . . contract." *Ibid.* Had there been no contract in *Chapman*, there would have been no duty and thus no cause of action for fiduciary duty.

9

No. 22-50933

Here, by contrast, the contract created a duty or obligation only relevant to the Bromley Plaintiffs' breach of contract claim. In the counterfactual scenario where SXSW obtained the Bromley Plaintiffs' money without a contract, the plaintiffs still could have brought their other claims for unjust enrichment and conversion. *Chapman* is thus distinguishable.

As the insured, SXSW has proffered a reasonable interpretation of the Contract Exclusion. Under Texas law, we must accept that interpretation. *See Gilbert Tex. Const.,* 327 S.W.3d at 133. The Contract Exclusion does not bar coverage for two of the claims in the Bromley Complaint: unjust enrichment and conversion. Moreover, because the complaint contains at least one covered claim, Federal "must defend the entire suit." *Zurich Am. Ins. Co.*, 268 S.W.3d at 491.

B.

The Policy also contains a Professional Services Exclusion. In relevant part, it states:

> The Company shall not be liable for Loss on account of any Claim against an Organization: . . . based upon, arising from, or in consequence of: . . . the rendering of, or failure to render, any Professional Services by an Insured . . . .

As with the Contract Exclusion, Federal argues that the Professional Services Exclusion precludes coverage for SXSW's loss related to the Bromley Complaint. Again, we disagree.

Because the Policy defines the term "professional services," we follow that definition. *See Evanston Ins. Co.*, 370 S.W.3d at 381 ("When an insurance policy defines its terms, those definitions control."). The Policy defines "professional services" to include "services which are performed for others for a fee." SXSW reasonably argues that "professional services" might include SXSW's actions in putting on (or failing to put on) the March

2020 festival. But "professional services" would not extend to SXSW's actions in refunding or not refunding ticket purchases, which are not services SXSW performs for a fee. Because the Bromley Complaint arises from SXSW's refusal to offer refunds—a decision that does not constitute a "professional service"—SXSW contends the Professional Services Exclusion does not apply.

We agree. Although there is no Texas case directly on point, we are persuaded by the Texas Supreme Court's repeated instructions to "strictly" construe exclusions against the insurer. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991); *see also Evanston Ins. Co.*, 370 S.W.3d at 380; *Gilbert Tex. Const.*, 327 S.W.3d at 124. We are also influenced by the state court decisions cited in our discussion of the Contract Exclusion. *See supra* Part III.A. In those cases, it was not enough that the contract was somehow traceable to or provided context for the claim—the contract had to specifically give rise to the claim. Here too, we hold that it is not enough that SXSW's failure to render professional services was somehow traceable to or provided context for the Bromley Complaint— the failure to render professional services had to specifically give rise to the claims in that complaint. Because the source of liability and motivation for the Bromley Complaint was SXSW's failure to refund 2020 festival tickets— which is not a professional service—the Professional Services Exclusion does not apply.[4]

---

[4] Federal cites two federal district courts to support its broader interpretation. *See* Red Br. at 40–41 (citing *Shore Chan Bragalone Depumpo LLP v. Greenwich Ins. Co.*, 856 F. Supp. 2d 891 (N.D. Tex. 2012), and *Shamoun & Norman, LLP v. Ironshore Indem., Inc.*, 56 F. Supp. 3d 840 (N.D. Tex. 2014)). But these authorities are worth relatively little in this case. Our focus is on Texas law as interpreted by the Texas state courts. *See Starr Indem. & Liab. Co. v. SGS Petroleum Serv. Corp.*, 719 F.3d 700, 702 (5th Cir. 2013) ("In deciding an issue of Texas state law, we rule as we believe the Texas Supreme Court would rule.").

No. 22-50933

## C.

Having decided that the policy exclusions for Contract and Professional Services do not bar coverage, we quickly dismiss Federal's two remaining arguments against coverage.

First, Federal argues that SXSW did not timely tender the defense of the Bromley Complaint. We join the district court in rejecting this argument as meritless. The Policy required SXSW to "tender the defense of any Claim" to Federal by notifying Federal no later than 30 days after the claim was first received by SXSW. SXSW received notice of the Bromley Complaint on April 24, 2020, and gave notice to Federal on April 27, 2020. That is plainly timely.

As noted above, Federal contends that SXSW's restitution claim is not a covered "Loss." *See supra* n.3 (rejecting that contention). But Federal also contends that restitution is uninsurable under Texas law. Again, we agree with the district court. Texas state courts have never held that restitution is *per se* uninsurable. Restitution *might* be uninsurable when the receipt of funds was unlawful, *see Nortex Oil & Gas Corp. v. Harbor Ins. Co.*, 456 S.W.2d 489, 493–94 (Tex. Civ. App.—Dallas 1970), but there is no suggestion that SXSW acquired the plaintiffs' money unlawfully. Accordingly, Federal's argument about covered loss fails.

\*     \*     \*

The district court's entry of summary judgment for Federal is REVERSED. And the case is REMANDED for further proceedings consistent with this opinion.

––––––––––––––––––––––––––––––

Given the manner in which the Texas state courts have approached contract exclusions, we believe SXSW's narrower interpretation better reflects Texas law.