**NORTEX OIL ·& GAS CORPORATION,**
Appellant,

v.

**HARBOR INSURANCE COMPANY,**
Appellee.

**No. 17448.**

Court of Civil Appeals of Texas,
Dallas.

June 12, 1970.

Rehearing Denied July 3, 1970.

Bill Womble, Lyne, Klein & French, Dallas, for appellant.

Royal H. Brin, Jr., Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellee.

DIXON, Chief Justice.

Appellant Nortex Oil & Gas Corporation, hereinafter called Nortex, sued appellee Harbor Insurance Company, hereinafter called Harbor, seeking recovery on an excess liability insurance policy. Nortex claims it is entitled to be indemnified for property damage claims it has paid.

Both parties filed motions for summary judgment based on the pleadings, admissions, exhibits and affidavits. It was stipulated that neither party had additional evidence which it desired to present to the court, nor would there be additional evidence on a trial on the merits. The court overruled the motion of Nortex and sustained that of Harbor. Accordingly judgment was rendered that Nortex take nothing by its suit.

The material facts are undisputed. In 1961 appellant purchased working interests in five producing oil wells. Humble Oil & Refining Company and Texaco, Inc. jointly owned six nearby producing oil and gas leases. In 1962 it was discovered that the bore holes through which Nortex was obtaining its oil at the surface of its own lease were slant holes—that is, the holes deviated from vertical to the extent that the bore holes of the Nortex wells crossed the boundary lines of the said leases and were bottomed in and under the adjacent leases owned by Humble and Texaco. Thereafter Nortex was required to plug and abandon all five of the wells it had purchased.

Humble filed two suits against Nortex for damages in an amount in excess of $550,000. Texaco intervened setting up its interest in the subject matter involved. Its pleadings for damages are substantially the same as those of Humble. Negotiations resulted in a compromise settlement of the suits for $46,860 cash. However Nortex had incurred and paid reasonable expenses, court costs and attorney's fees amounting to $32,075.55 in the course of investigating and defending against the claims and in compromising the suits. Thus Nortex claims a loss totaling $78,935.55.

The material allegations in the petition of Humble against Nortex in one suit were as follows:

"* * * directional surveys revealed that said surveyed wells while surfaced on the defendants' lease were actually bottomed under plaintiff's above described oil, gas and mineral lease. * * all of such oil and gas produced from defendants' said surveyed wells was the property of plaintiff at the time of such production, and such production or purported sale of oil and gas from plaintiff's said lease was and is continuing to be a conversion by defendants of plaintiff's oil and gas, and defendants have been and are continuing said trespass. * * * All of the said oil produced by defendants from plaintiff's lease was reduced to possession by defendants and produced by and through said wells surfaced on defendants' lease, * * * placed in tanks on said defendants' lease, and from said tanks was delivered to purchaser of said oil; * * *

"Plaintiff did not authorize the defendants' acts nor consent to defendants' acts in reducing plaintiff's oil to defendants' actual or constructive possession by capturing and producing said oil through said defendants' wells;

in exercising dominion over said oil in gathering said oil into gathering lines on said lease; in delivering said oil produced from said wells to the purchaser of said oil and so authorizing the sale to the purchaser; in receiving payment for any portion of said oil from the purchaser; * * *

"By virtue of the physical trespass of the well bore of the defendants' well or wells into the subsurface estate covered by plaintiff's lease and by virtue of the past and continuing trespass upon plaintiff's said leasehold estates and defendants' continuing conversion of the oil and gas from plaintiff's leasehold estates, * * * and by virtue of said moneys had and received by defendants as consideration for purportedly selling plaintiff's oil and gas and to which moneys this plaintiff is justly entitled to receive, plaintiff is entitled to recover its damages in excess of the sum of $ for such conversion and trespass and money had and received. * * *

"WHEREFORE, plaintiff prays that * * * plaintiff recover of and from defendants all damages it has sustained by reason of said trespass upon plaintiff's leasehold estate and for the highest intermediate value of all oil removed therefrom and converted by defendants and in the alternative for money had and received by said defendants to which this plaintiff was and is entitled, * *."

In the other suit the material allegations were as follows:

"On the basis of the facts heretofore set forth, plaintiff further alleges that such wells on defendants' lease have been and are now producing oil and gas from plaintiff's lease through said wells surfaced on defendants' lease but bottomed and producing from plaintiff's

leases; and, therefore, all of such oil and gas was the property of plaintiff at the time of such production, and that such production from plaintiff's leases was and is continuing to be a conversion by defendants of plaintiff's oil and gas to plaintiff's damage in excess of the sum of Two Hundred Forty Thousand Dollars ($240,000.00).

* * * * * *

"WHEREFORE, plaintiff prays * * that plaintiff recover of and from defendants all damages it has sustained by reason of the trespass upon plaintiff's leasehold estate and for the highest intermediate value of all oil removed therefrom by defendants, * * *."

Intervenor Texaco adopted the allegations of Humble. Texaco's prayer was as follows:

"WHEREFORE, premises considered, Plaintiff Texaco Inc. prays that it recover of and from the Defendants all damages it has sustained by reason of said trespass upon Plaintiff's leasehold estate and for the highest intermediate value of all oil removed therefrom and converted by Defendants and in the alternative for money had and received by said Defendants to which this Plaintiff was and is entitled, * * *."

Nortex had notified Harbor of the filing of the suits and of the nature of the claims asserted by Humble and Texaco and had offered to associate Harbor with Nortex in defending the causes. Harbor refused. After the settlement of the suits Nortex made demand on Harbor for indemnification and payment for its "ultimate net loss" which was alleged to be $53,935.55, being $78,935.55 less the alleged deductible sum of $25,000. Harbor refused payment. Following such refusal Nortex filed this suit.[1]

1. The policy provisions on which Nortex bases its claim for recovery against Harbor are as follows:
"1. COVERAGE—

Underwriters hereby agree, subject to the limitations, terms and conditions hereinafter mentioned, to indemnify the Assured for all sums which the Assured

To establish its contention that under the terms of the policy it is not liable, Harbor relies on the same provisions as Nortex and also on several other provisions.[2]

## OPINION

Appellant Nortex rests its appeal on two points of error. (1) It asserts that the court erred in sustaining Harbor's motion for summary judgment because the undisputed evidence shows that the provisions of the excess liability policy issued to appellant by appellee (on which this suit is based) binds Harbor to pay appellant's ultimate net loss suffered by virtue of property damage claims of Humble and Texaco. (2) In the alternative appellant says the terms of the policy are ambiguous, therefore should be construed strictly against appellee.

Appellee Harbor's position as stated in counterpoints is that (1) the trial court correctly sustained appellee's motion for

shall be obligated to pay by reason of the liability imposed upon the Assured by law, or, in respect only of operations by or on behalf of the Named Assured, assumed by the Assured under contract or agreement, for damages, direct or consequential, and expenses, all as more fully defined by the term 'ultimate net loss', on account of personal injuries, including death at any time resulting therefrom, and property damage, caused by or arising out of each occurrence happening during the Certificate Period. * * *

"3. PROPERTY DAMAGE—

The term 'Property Damage', wherever used herein, shall include, but not by way of limitation, damage to or destruction or loss of property, exclusive however, damage to property owned by the Named Assured. * * *

"5. ULTIMATE NET LOSS—

The term 'ultimate net loss' shall mean the total sum which the Assured, or any company as his insurer, becomes obligated to pay by reason of Personal Injury or Property Damage Claims, either through adjudication or compromise, and shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, charges and law costs, premiums or appeal bonds, interest, expenses for doctors, lawyers, nurses, and investigators and other persons, and for litigation, settlement, adjudgment and investigation of claims and suits which are paid as a consequence of any occurrence covered hereunder, excluding only the salaries of the Named Assured's or of any underlying insurer's permanent employees."

2. The other policy provisions on which appellee *Harbor relies to support its* claim of non-liability are as follows:

"B—Property Damage Liability The Company hereby agrees, subject to the terms, conditions and limitations hereinafter mentioned to indemnify the insured in respect of accidents occurring during the policy period for any and all sums which the insured shall by law become liable to pay and shall pay or by final adjudgment be adjudged to pay to any person or persons as damages for damage to property (other than property of the Insured, or their employees, or property in their care, custody or control) accidently sustained by reason of the insured's operations as shown in Item 1 of the Declarations and as more fully described in the underlying policy/ies issued to the Insured by the Primary Insurors as shown in Item 5 of the Declarations.

"Provided always that it is expressly agreed that liability shall attach to the Company only after the Primary Insurors have paid or have been held liable to pay the full amount of their respective ultimate net loss liability as shown in Item 5 of the Declarations, (hereinafter called the Primary Limits); and the Company shall then be liable to pay only such additional amounts as will provide the Insured with a total coverage under the policy of the Primary Insurors and this policy combined of the amounts shown in Item 6 of the Declarations."

" * * * property damage, caused by or arising out of each occurrence happening during the certificate period."

"11 LIMIT OF LIABILITY

Underwriters hereon shall only be liable for the ultimate net loss the excess of either (1) The amounts recoverable under Underlying Insurances as set out in the attached schedule, or (2) Where not covered by said Underlying Insurances $25,000 ultimate net loss in respect of each occurrence combined Personal Injuries and Property Damage."

"It is a condition of this Policy that the policy/ies of the Primary Insurers as described in Item 3 and/or 5 hereof shall be maintained in full effect during the currency of this Policy."

summary judgment and overruled that of appellant Nortex because under the record there were no bona fide issues of fact on which appellant could have been entitled to recover; (2) the trial court correctly held that the claims of Humble and Texaco, the value of property taken and for unjust enrichment, were not claims for property damage within the meaning of the policy, therefore were not covered by the policy; and (3) Nortex is not entitled to recover because the total amount claimed as a loss is less than the applicable deductible for underlying insurance required to be maintained.

We agree with appellee.

Nortex in its second point of error asserts that the terms of the policy are ambiguous, but this position is taken only in the alternative. The main contention of Nortex is that the terms of the policy are plain, definite and unambiguous. Harbor also contends that the policy provisions are unambiguous. In our opinion the policy provisions are unambiguous.

When the terms of an insurance policy are unambiguous they speak for themselves and there is no occasion for the court to apply special rules of construction or interpretation. Vaughn v. Atlantic Ins. Co., 397 S.W.2d 874 (Tex.Civ. App., Tyler 1966, writ ref'd n. r. e.). In this case, after a careful study of the record as a whole, we are convinced that the claims of Humble and Texaco were for conversion—the wrongful appropriation of oil and its storage in tanks and its subsequent sale. Humble and Texaco did not seek to recover the difference between the value of their leasehold estates immediately before the injury and its value immediately after. Such would have been the measure of damages for damage to their leasehold estates. Hood v. Adams, 334 S.W.2d 206 (Tex.Civ.App., Amarillo 1960, no writ); Westwood Development Co. v. Esponge, 342 S.W.2d 623, 627 (Tex. Civ.App., San Antonio 1961, writ ref'd n. r. e.). Humble and Texaco specifically

charged conversion of their oil by Nortex and expressly prayed for "the highest intermediate value of all oil *removed therefrom and converted* by defendants and in the alternative for money had and received by said defendants to which this plaintiff was and is entitled." (Emphasis ours.)

There is a material difference between "property taken" and "property damaged". Sunray Enterprises, Inc. v. Rosenaur, 335 S.W.2d 670 (Tex.Civ.App., Dallas 1960, writ ref'd n. r. e.); Webb v. Dameron, 219 S.W.2d 581 (Tex.Civ.App., Amarillo 1949, writ ref'd n. r. e.); Tarrant County Water Control & Improvement Dist. No. 1 v. Reid, 203 S.W.2d 290 (Tex.Civ.App., Fort Worth 1947, writ ref'd n. r. e.); Burgess v. City and County of Dallas Levee Imp. Dist., 155 S.W.2d 402 (Tex. Civ.App., Eastland 1941, writ ref'd w. m.); McCammon & Lang Lumber Co. v. Trinity & B. V. Ry. Co., 104 Tex. 8, 133 S.W. 247 (1911); Duvall v. City of Dallas, 27 S.W. 2d 1105 (Tex.Civ.App., Dallas 1930, writ ref'd); Fort Worth Improvement Dist. No. 1 v. City of Fort Worth, 106 Tex. 148, 158 S.W. 164 (1913); Harrington v. Texaco, Inc., 339 F.2d 814 (5th Cir. 1964); Pan American Petroleum Corp. v. Long, 340 F.2d 211 (5th Cir. 1964).

The use of the word "trespass" is not in itself determinative of whether a claim is for property damage or conversion. Hughett v. Caldwell County, 313 Ky. 85, 230 S.W.2d 92 (1950); Overton Refining Co. v. Harmon, 81 S.W.2d 207 (Tex.Civ. App., Amarillo 1935, affirmed 130 Tex. 365, 110 S.W.2d 555); Kelvin Lumber & Supply Co. v. Copper State Mining Co., 232 S.W. 858 (Tex.Civ.App., El Paso 1921, no writ).

We are convinced that the claims of Humble and Texaco were for conversion and unjust enrichment, and not claims for property damage within the meaning of the policy. When Nortex settled the claims of Humble and Texaco it did not sustain a "loss" within the meaning of the insurance contract; it was merely paying for oil it

had removed and sold from the land of Humble and Texaco. An insured (under such a policy as we have here) does not sustain a covered loss by restoring to its rightful owners that which the insured, having no right thereto, has inadvertently acquired. (The insured's innocence and good faith are immaterial.) The insurer did not contract to indemnify the insured for disgorging that to which it was not entitled in the first place, or for being deprived of profits to which it was not entitled.

For another reason we think appellant is not entitled to recover under the terms of this policy. Nortex says that the deductible under the terms of the policy is only $25,000. So Nortex computes the amount for which Harbor is liable as follows: $78,935.55 less $25,000 deductible which leaves an amount due of $53,935.55.

However Harbor in a counterpoint calls our attention to the provisions in the policy requiring Nortex to maintain "underlying insurances" in accordance with an attached schedule. The attached schedule shows the amount of required "underlying insurance" to be $100,000 for property damage. The policy also provides that Harbor shall be liable only after the primary insurers "have paid or shall be liable to pay the full amount of their respective net loss liability" and "the Company [Harbor] shall then be liable to pay only such additional amounts as will provide the Insured with a total coverage * * *." It is undisputed that this is an "Excess Liability Policy". Nortex itself so describes the policy in its first point of error. There is no evidence of any reduction of the limit required for underlying insurers by any prior payments by said insurers of claims in regard to previous accidents or occurrences. It was stipulated in open court that "neither party had additional evidence it desired to present to the court, or would there be additional evidence on a merits trial."

Since the total indemnification prayed for by Nortex is only $53,935.55—less than the $100,000 requirement for underlying insurance—Nortex is not entitled to recover under the terms of the policy in question.

The two points of error of appellant Nortex are overruled.

The judgment of the trial court is affirmed.