[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 04-15980
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 11, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00611-CV-N

AMERICAN GENERAL LIFE INSURANCE COMPANY,
U.S. LIFE INSURANCE COMPANY,


                                        Plaintiffs-Appellants,

THE FRANKLIN LIFE INSURANCE COMPANY, et al.,

                                         Plaintiffs,

                    versus

ACE INSURANCE COMPANY,
CIGNA PROPERTY & CASUALTY COMPANY,
CIGNA INSURANCE COMPANY,


                                        Defendants-Appellees.


_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(May 11, 2005)

Before BIRCH, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

The central question presented in this case is whether, under Texas state law, an insurance policy exclusion for claims or suits related to pending litigation can relieve an insurer of its duty to defend. The district court answered in the affirmative, granting summary judgment to the insurer for those claims that related to an earlier class action litigation. With respect to whether other policy exclusions precluded coverage on other non-related claims, the district court granted summary judgment in part and denied summary judgment in part. For the reasons that follow, we affirm the ruling of the district court.

## BACKGROUND

In 1998, a predecessor company to Plaintiff-Appellant American General Life Insurance Company ("AmGen") settled a class action litigation involving a plaintiff named Paul Garst. The two class action complaints (*Garst* complaints) alleged that AmGen's predecessor and its agents engaged in a scheme to misrepresent the nature of life insurance policies to induce the class to purchase them. The agents were alleged to have misrepresented that the premiums would vanish within a certain number of years, or would not vary; that the policies were investment vehicles; and that the policyholders would benefit from rolling over

2

existing policies. The *Garst* complaints alleged that the misrepresentations were carried out through policy illustrations, uniform sales scripts, and marketing materials prepared by AmGen's predecessor. Ultimately, this class action settled, releasing AmGen's predecessor and its agents from liability with respect to those plaintiffs who did not opt out.

Later in 1998, AmGen's predecessor asked a predecessor to Defendant-Appellee Ace Insurance Company ("Ace") to underwrite and insure AmGen, its affiliated insurance companies, and its agents. A letter agreement was issued on December 8, 1998, to the effect that Ace would insure AmGen and its agents. The parties dispute the legal effect of this letter agreement.

When Ace learned of the class action litigation from one of its reinsurers, it drafted two endorsements to AmGen's insurance coverage: the Claims Exclusion and the Prior Acts Endorsement. AmGen responded to Ace stating that the exclusions were unacceptable. After a disagreement as to whether AmGen provided sufficient notice of the class action in its annual report, Ace issued the policies. Each Master Policy, delivered in January or February of 1999, included the endorsements.

The Master Policies provide coverage on behalf of the insured's agent for all amounts in excess of the deductible and up to the limit of liability, which the

3

insured becomes legally obligated to pay as damages. In order to qualify for coverage, the damages must be caused by a wrongful act arising out of the provision of professional services by the insured. The Master Policies also provide coverage on behalf of the named insured–i.e., the company–for all amounts in excess of the deductible, which the named insured becomes legally obligated to pay by reason of vicarious liability arising out of the wrongful acts of its insured agents.

The exclusions that are at issue in this case are Exclusion C, Exclusion K, and Exclusion O. Exclusion C states that Ace will not defend or pay for "[a]ny claim or suit for damages in any way related to any litigation which commenced prior to the Effective Date . . . ." The policies define "related claims" as "all claims involving the same wrongful act or wrongful acts which are logically or causally connected by reason of common fact, circumstance, situation, transaction, even or decision." Exclusion O bars coverage for claims or suits for damages arising out of the insured's "promise of guarantees as to interest rages, fluctuations in interest rates, future premium payments, or market values." Exclusion K bars coverage for intentional acts.

In 1999, notice of settlement and opt-out procedures were sent to the class involved in the *Garst* litigation. Multiple class plaintiffs opted out and filed their

4

own lawsuits. Ace characterizes these plaintiffs' complaints (the "opt-out complaints") as asserting essentially the same allegations as the *Garst* complaints, but concedes that the individual complaints were tailored to reflect the particular alleged fraud experienced by the individual plaintiff. Ace presented the district court with complaints that it claims are representative[1] of other complaints filed by the same attorneys on behalf of other clients.[2] The defendants named in these opt-out complaints were AmGen (or its predecessor and/or its affiliates) and various agents. The primary allegations in the complaints are that the agents named made fraudulent representations to the plaintiffs. All but one complaint relies almost exclusively on allegations of fraud at the time of the sale of the policies. The opt-out plaintiffs each seek to hold the individual agent directly liable for these misrepresentations and the company liable vicariously or for improper supervision.

AmGen, pursuant to its policies with Ace, demanded that Ace defend AmGen and its agents in the opt-out suits. When Ace declined to defend Ace, citing its policy exclusions, AmGen defended its agents, then brought suit seeking

---

[1]Apparently, AmGen failed below to point to evidence that refuting Ace's characterization of these complaints as "representative." The district court therefore analyzed the complaints as if they did indeed represent the opt-out plaintiffs. Because AmGen waived its objection below, we likewise proceed under the assumption that these complaints are representative.

[2]The district court refers to these complaints by their Exhibit number. Each Exhibit, attached to Document 34, contains a complaint that is representative of other opt-out plaintiffs making similar claims. For consistency, we will refer to these complaints in the same manner.

a declaration that Ace breached its duty to defend and a judgment awarding AmGen costs for defense and settlement of the opt-out suits.

The district court granted summary judgment in part and denied in part in Ace's favor. The court also denied AmGen's summary judgment motion. This appeal followed.

## STANDARD OF REVIEW

We review grants of summary judgment *de novo*, using the same standard as the district court. *See NAACP v. Hunt*, 891 F.2d 1555, 1559 (11th Cir. 1990).

## DISCUSSION

### I. Texas Law

Under Texas law, insurance contracts are interpreted under the same rules of construction as standard contracts. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987). If the insurance policy is susceptible to more than one reasonable interpretation, however, any ambiguity will be resolved by adopting a construction that favors the insured. *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 554 (Tex. 1991)

When determining whether an insurer has a duty to defend its insured, courts use the so-called "eight corners" rule, or "complaint allegation" rule. This rule requires courts to compare the insurance policy with the allegations in the petition

6

or complaint filed against the insured. *See King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). Thus, the duty to defend is determined from the face of the pleading, without regard to ultimate truth or falsity of the allegations. *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex. 1965); *see also Cigna Lloyds Ins. Co. v. Bradleys' Elec., Inc.*, 33 S.W.3d 102, 104–05 (Tex. App. 1992) ("The focus of the inquiry . . . must be *105 on the facts alleged, not the legal theories alleged. When the court reviews the allegations to determine whether a liability insurer has a duty to defend its insured, a liberal interpretation in favor of the insured should be given. *See Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

There is some confusion in the Texas circuit courts about whether there are exceptions to the eight corners rule. Some courts have held that extrinsic evidence may be considered if the policy terms are ambiguous, or the petition does not contain factual allegations sufficient to enable the court to determine whether the claims are within the policy coverage. *Utica Lloyd's of Tex. v. Sitech Eng'g Corp.*, 38 S.W.3d 260, 263 (Tex. App. 2001); *State Farm Ins. v. Wade*, 827 S.W.2d 448, 453 (Tex. App. 1992); *Gonzales v. Am. States Ins. Co.*, 628 S.W.2d 184, 187 (Tex. App. 1982) ("[W]here the basis for the refusal to defend is that the events giving rise to the suit are outside the coverage of the insurance policy, facts extrinsic to

7

the claimant's petition may be used to determine whether a duty to defend exists").

Other courts are hesitant to apply any exceptions at all. *See Landmark Chevrolet Corp. v. Universal Underwriters Ins. Co.*, 121 S.W.3d 886, 891 (Tex. App. 2003) (applying strict eight corners rule to prohibit the "inject[ion]" of missing facts into the complaints); *Tri-Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co.*, 981 S.W.2d 861, 863–64 (Tex. App. 1998) (applying the strict eight corners approach to reverse trial court's use of extrinsic evidence).

## II.    Policy Exclusions

The district court held that Exclusion C, which bars coverage for claims related to pending litigation, relieved Ace of its duty to defend the lawsuits exemplified by Exhibits 8-11. Since the district court entered its summary judgment order, the Texas Court of Appeals issued a decision that is directly on point. *King Chapman & Broussard Consulting Group, Inc. v. Nat'l Union Fire Ins. Co.*, __ S.W.3d __ (Tex. App. 2005). In that case, the Texas court concluded that the "prior litigation" exclusion in the insurance policy precluded coverage. The Court reviewed the allegations in the prior litigation and concluded that the insurer had no duty to defend the current claim because it was related to the prior litigation. *Id.* at __. It appears that this court did not consider it a violation of the eight corners rule to look to the allegations of the prior lawsuits.

In this case, the district court conducted its analysis in the same manner as the Texas Court of Appeals, comparing the allegations in the opt-out complaints with those in the prior *Garst* complaints. The court noted that the Third Amended Complaint in the *Garst* class action alleges that AmGen's predecessor induced class members to purchase policies through misrepresentations and omissions made in company generated policy illustrations and materials. The class action also alleges that AmGen's predecessor trained its sales representatives to make uniform, consistent written misrepresentations and memorize sales scripts. Based on these allegations, the class brought claims for fraud, fraudulent concealment, and deceit. The court granted summary judgment in favor of Ace for Exhibits 8-11 finding that Ace had no duty to defend these "related" claims. We affirm because Ace carried its summary judgment burden. Ace demonstrated, as required by *King Chapman*, that the factual allegations in the *Garst* complaints and the opt-out complaints represented by Exhibits 8-11 are related, arising out of the same scheme of misrepresentation perpetrated by AmGen's predecessor.

Notably, the district court observed that not all of the representative opt-out complaints involve these types of allegations. Rather, the Exhibit 12 complaint involved allegations that did not implicate misrepresentations stemming from the company's own promotional campaign. The complaint asserted a vicarious

9

liability theory that the agents breached their obligation to communicate changed circumstances to the policyholders, which resulted in the policy performing worse than the agents had promised it would. The court concluded that Exhibit 12 was not a "related claim" and therefore not excluded by Exclusion C. Additionally, the court found that concealment continued after the class action settled, meaning that the acts of concealment would not be "prior" or "pending" claims or suits as required by Exclusion C. With respect to the claims in Exhibit 12, then, the Court granted summary judgment to the extent that the claims were intentional acts based on Exclusion K (barring coverage for intentional acts). Insofar as these claims were based on negligence, however, the court denied summary judgment.

Under Texas law, when the words of a policy are unambiguous, courts must accord them their "plain, ordinary and generally accepted meaning." *Western Reserve Life Ins. Co. v. Meadows*, 261 S.W.2d 554, 557 (Tex. 1957). We affirm the district court because it has interpreted the policy exclusions in a manner consistent with their plain meaning.

## CONCLUSION

After reviewing the thorough district court order and the parties' briefs, we find no error. Accordingly, we affirm the district court.

**AFFIRMED.**