**Motion for Rehearing Overruled; Opinion of September 15, 2015, Withdrawn; Affirmed in Part, Reversed in Part, Remanded, and Substitute Opinion filed November 10, 2015.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-14-00740-CV**

---

**ROGER D. BURKS, Appellant**

**V.**

**XL SPECIALTY INSURANCE COMPANY, Appellee**

---

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2013-32662**

---

## S U B S T I T U T E   O P I N I O N

We overrule the motion for rehearing, withdraw our opinion dated September 15, 2015, and issue the following substitute opinion.

Appellant Roger D. Burks was the chief financial officer of Superior Offshore International, Inc., which had obtained a directors and officers (D&O) insurance policy from appellee XL Specialty Insurance Company.  Superior

Offshore ultimately reorganized through a Chapter 11 bankruptcy, and the plan agent sought to recover property that the company transferred to Burks and to avoid future obligations owed to him. After XL denied Burks's request for defense expenses and coverage under the D&O policy, Burks settled the plan agent's claim.

In this case, Burks sued XL for breach of the D&O contract, seeking damages for his defense expenses and the amount of his settlement with the plan agent. XL moved for summary judgment on these grounds: (1) the plan agent's claim was brought outside of the policy period for this claims-made policy, and the claim was not interrelated with other prior shareholder derivative actions; (2) XL had no duty to advance defense expenses because there was no possibility of coverage for the plan agent's claim, which sought disgorgement and was therefore not covered by the policy's definition of "loss"; and (3) XL similarly had no duty to indemnify Burks because the plan agent sought disgorgement, which was not covered under the policy's definition of "loss." The trial court signed a final summary judgment in XL's favor without specifying the grounds, and Burks appealed.[1]

First, we review the standards for summary judgment and principles of insurance contract interpretation. Then, we address each of the grounds XL urged for summary judgment. Ultimately, we hold that XL has not shown that it is entitled to summary judgment on Burks's breach of contract claim.

---

[1] Burks alleged claims other than breach of contract, and the summary judgment disposed of those claims, but on appeal Burks challenges only the disposition of his breach of contract claim.

We affirm the trial court's judgment in part, reverse the judgment as to Burks's breach of contract claim, and remand for proceedings consistent with this opinion.[2]

## I.
### STANDARDS FOR SUMMARY JUDGMENT
### AND
### PRINCIPLES FOR INSURANCE CONTRACTS

We review summary judgments de novo, and when, as here, the trial court grants the judgment without specifying the grounds, we will affirm if any of the grounds presented are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). The movant for a traditional summary judgment must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). A defendant is entitled to summary judgment if the defendant negates at least one essential element of the plaintiff's cause of action. *See Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). We review the summary judgment evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable fact finders could, and disregarding contrary evidence unless reasonable

---

[2] We note that Burks also appeals the trial court's denial of his motion for partial summary judgment on liability, but we do not generally review the trial court's denial of a summary judgment motion. S*ee Cont'l Cas. Co. v. Am. Safety Cas. Ins. Co.*, 365 S.W.3d 165, 172 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). Although there is an exception requiring an appellate court to render the judgment the trial court should have rendered when both parties move for summary judgment, the exception does not apply unless both parties have moved for a *final* summary judgment. *See id.* Because Burks's motion was for a partial summary judgment only, we do not review it. *See id.*

fact finders could not. *Mann Frankfort*, 289 S.W.3d at 848; *see also Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004).

When interpreting an insurance policy, we follow the "general rules of contract construction to ascertain the parties' intent." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). We look to the language of the policy because we presume the parties intend what the words of their contract say. *Id.* "Terms in insurance policies that are subject to more than one reasonable construction are interpreted in favor of coverage." *Id.* at 133.

## II.
### INTERRELATED CLAIMS

The parties agree that the D&O policy was a claims-made policy, and the plan agent's claim was asserted after the policy period expired. But Burks contends that the trial court erred by granting a summary judgment to XL on this ground because the plan agent's claim was "deemed to have been made during the policy period" under the "interrelated claims" provision of the policy. XL urged in its motion for summary judgment that the plan agent's claim was not interrelated with prior shareholder derivative actions, so there was no possibility of coverage. XL also urged that the court could not consider the complaints in the derivative action under the eight-corners rule.

First, we review the relevant policy terms. Then, we hold that the eight-corners rule does not prevent consideration of the derivative action complaints to determine whether the plan agent asserted an interrelated claim. Next, we review the evidence submitted by the parties: complaints from the derivative actions and the bankruptcy proceeding. Finally, we hold that Burks raised a genuine issue of material fact on the interrelatedness of the claims. Thus, XL was not entitled to summary judgment on this ground.

4

## A.    Relevant Policy Terms

A claims-made policy, like the D&O policy here, only covers claims first asserted against the insured during the policy period.  *See Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.*, 288 S.W.3d 374, 378 (Tex. 2009).  The parties agree that the plan agent's claim against Burks in the bankruptcy proceeding was not, facially, made during the policy period.

The parties dispute, however, whether the plan agent's claim should be covered under the interrelated-claims provision, which provides as follows:  "All **Claims** arising from the same **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest time at which the earliest such **Claim** is made or deemed to have been made pursuant to [the notice conditions]."[3]

The parties disagree about whether the plan agent's claim arose from the same interrelated wrongful acts alleged in shareholder derivative actions against Burks that were brought during the policy period.  The policy defines "interrelated wrongful acts" as "any **Wrongful Act** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any of the same or related, or series of related, facts, circumstances, situations, transactions, or events."

The parties also disagree about whether the plan agent asserted a "wrongful act" against Burks, which is defined in relevant part as "any actual or alleged act, error, or omission, misstatement, misleading statement, neglect, or breach of duty by any **Insured Person** while acting in his or her capacity as an . . . **Insured Person** of the **Company**."

---

[3] Bolded terms are defined in the policy.

5

**B.     Eight-Corners Rule**

XL attached evidence to its motion including, among other things, the plan agent's complaint and a derivative action complaint.  Burks responded to XL's motion and submitted an additional derivative action complaint, although the allegations in each derivative action were substantially the same.

XL contends that the eight-corners rule prevents this court from reviewing both of the derivative action complaints to determine whether XL had a duty to advance defense expenses under the policy.  The eight-corners rule requires Texas courts to look only to the pleadings and the insurance policy to determine whether a duty to defend exists.  *See Weingarten Realty Mgmt. Co. v. Liberty Mut. Fire Ins. Co.*, 343 S.W.3d 859, 862 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). When determining a duty to defend issue, applying the eight-corners rule means that the allegations in the third-party pleadings are considered without regard to their truth or falsity, and the insurer cannot contradict them with extrinsic evidence.  *See id.* at 864.  "The rationale behind the eight-corners rule is to require insurers to defend the insured against all claims, even those without merit."  *Id.*

XL cites no authority to suggest that the rule applies to a duty to advance defense expenses.  *See Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, 600 F.3d 562, 574 (5th Cir. 2010) ("[N]o Texas state court has applied the rule to a case, like the present one, involving a duty to advance defense costs."). Regardless, the rationale for the rule does not apply when an insured seeks to establish coverage under an interrelated-claims provision.  *See Weingarten*, 343 S.W.3d at 865 (recognizing a limited exception to the eight-corners rule for a "pure coverage" question where the insurer is not questioning the merits of the underlying third-party claim, and the extrinsic evidence goes "strictly to an issue of

6

coverage without contradicting any allegation in the third-party claimant's pleadings material to the merits of that underlying claim").

Burks is not trying to contradict any allegations in the plan agent's complaint. Thus, the eight-corners rule does not bar him from proving coverage under the interrelated-claims provision by referring to complaints from prior claims. *See ACE American Ins. Co. v. Ascend One Corp.*, 570 F. Supp. 2d 789, 795 (D. Md. 2008) (under Maryland law, the exclusive-pleadings or eight-corners rule did not bar the insured from using extrinsic evidence to prove the potentiality of coverage under an interrelated-claims provision); *see also American Gen. Life Ins. Co. v. Ace Ins. Co.*, 131 Fed. App'x 217, 221 (11th Cir. 2005) (under Texas law, the eight-corners rule did not bar insurer from introducing extrinsic evidence to show relatedness of claims under an exclusion that barred coverage for claims related to pending litigation).

## C.   The Evidence

### 1.   *Derivative Actions*

During the policy period, Burks and eight other officers and directors of Superior Offshore were sued in two derivative actions. The plaintiffs in both actions alleged claims for breach of fiduciary duties, insider selling of stock, misappropriation of information, abuse of control, gross mismanagement, waste of corporate assets, and unjust enrichment. The plaintiffs sought money damages, equitable or injunctive relief, attorney's fees and costs, accountant's fees, expert's fees, expenses, and restitution, including disgorgement of "all profits, benefits and other compensation obtained by [Burks]."

The derivative actions alleged that the directors and officers made misrepresentations about the financial health of the company while the defendants

"profited handsomely" by selling stock based on insider information, and the defendants artificially inflated the price of the stock "so they could protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof." Regarding the unjust enrichment claim, the plaintiffs sought "restitution from these Individual Defendants [and] an order of this Court disgorging all profits, benefits, and other compensation obtained by these Defendants, and each of them, from their wrongful conduct and fiduciary breaches." Regarding the waste-of-corporate-assets claim, the plaintiffs alleged that the defendants "caused Superior Offshore to waste valuable corporate assets by paying incentive based bonuses to certain of its executive officers."

## 2.      *Plan Agent's Complaint and Objection to Claims*

The plan agent's complaint and objection to Burks's claims in the bankruptcy proceeding sought to recover transfers of money and stock made to Burks (the "2007/2008 Transfers"), and to avoid obligations under an agreement for compensation to Burks (the "Separation Agreement"). The legal bases for the plan agent's complaint and objections were that Superior Offshore did not receive reasonably equivalent value under the Bankruptcy Code and the Texas Uniform Fraudulent Transfers Act (TUFTA). *See* 11 U.S.C. § 548(a)(1)(B); Tex. Bus. & Com. Code Ann. §§ 24.005(a)(2), 24.006(a). The plan agent also sought to avoid Superior Offshore's obligations under the Separation Agreement as a preferential transfer under the Bankruptcy Code. *See* 11 U.S.C. § 547(b). The plan agent alleged that Burks was an insider of the company and that the transfers under the Separation Agreement were made while the company was insolvent.

The plan agent identified the "2007/2008 Transfers" that the plan agent sought to avoid:

8

(i) non-base salary compensation paid to Burks during 2007 and 2008 in the amount of approximately $243,000; (ii) the additional base salary paid to Burks after the September/October, 2007 raise described herein; (iii) the perquisites identified above and paid during 2007 and 2008 [such as an automobile allowance, tax and estate planning services, and life insurance premiums]; (iv) the transfer(s) to Burks of no less than 256,667 shares of the Debtor's common stock; (v) the 2007 employment agreement and all related agreements; and (vi) the General Release . . . .

The plan agent also detailed the terms of the Separation Agreement, which included an obligation to pay Burks about $675,000 in severance payments, nine months of medical and dental benefits, payment of some legal fees, and a company-supplied cell phone.

## D.     Analysis

XL makes two arguments for why the broad policy definitions do not encompass the plan agent's complaint.  First, XL contends that the plan agent did not allege a "wrongful act" by Burks.  Second, XL contends that the plan agent did not allege "interrelated wrongful acts."  We address each argument in turn.

### 1.     *Wrongful Acts*

XL contends that the plan agent did not allege that Burks "acted wrongfully," and "the intent of [Burks] is not at issue" in the bankruptcy proceeding because the plan agent sought recovery only under the constructive fraud theories of the Bankruptcy Code and TUFTA.  However, the plain language of the policy does not require scienter to establish a wrongful act.  The term is defined broadly as "any . . . alleged act, error, or omission . . . by any **Insured Person** while acting in his or her capacity as an . . . **Insured Person** of the **Company**."  Here, the plan agent alleged acts and omissions—the receipt of money, stock, and other benefits, and the failure to give Superior Offshore

9

something of reasonably equivalent value—while Burks was acting as a corporate officer. Viewing the evidence in the light most favorable to Burks, he raised a fact issue as to whether the plan agent alleged a wrongful act.

### 2. *Interrelated Wrongful Acts*

Next, XL contends that the plan agent's allegations are not related to the derivative actions. Initially, we note that an interrelated-claims provision is a double-edged sword. Most often, insurers use it to exclude coverage for claims made during the policy period when those claims relate to claims made before the policy period began. *See, e.g.*, *Reeves Cnty. v. Houston Cas. Co.*, 356 S.W.3d 664, 675 (Tex. App.—El Paso 2011, no pet.). But such a provision can also be used, as Burks seeks here, to have a claim that is made after the policy period deemed one made during the policy period, thus including coverage for a subsequent claim. *See, e.g.*, *Blackburn v. Fid. & Deposit Co. of Md.*, 667 So. 2d 661, 670 (Ala. 1995).[4]

As quoted above, the definition of "interrelated wrongful acts" is incredibly broad as it includes any wrongful act that "in any way involv[es] any of the same or related . . . facts, circumstances, situations, transactions, or events." *See XL Specialty Ins. Co. v. Perry*, No. CV 11-02078-RGK, 2012 WL 3095331, at *6 (C.D. Cal. June 27, 2012) (excluding claims under this "broad" definition, which describes "a wide range of causal connections . . . that will suffice to make claims fall within the scope of 'interrelated wrongful acts'").

---

[4] *See generally* John E. Zulkey, *Related and Interrelated Acts Provisions*, 50 Tort Trial & Ins. Prac. L.J. 83, 92–93 (2014) (collecting cases) ("Most commonly, insurers rely on such provisions to argue that claims that are made during the policy period should be deemed to have been made prior to the inception of the coverage period—and thus are not covered by that policy—because they are related to claims that were first-made before the inception date. . . . Policyholders have relied on such provisions to argue in favor of coverage for claims made after the end of the coverage period on the basis that they were related to claims that were made within the coverage period.").

In *Reeves County*, the El Paso Court of Appeals held that claims were interrelated when both suits involved the same parties, alleged similar facts, and involved similar alleged wrongful actions taken by the defendant. *See* 356 S.W.3d at 674–75. Several cases discussed in *Reeves County* are also illustrative. In ruling that claims were not related, the United States District Court for the District of Maryland focused on the temporal differences and the nature of the claims—the first claim was a private action by individuals and the second was a governmental investigation dealing with transactions and events from a completely different time period. *See ACE American Ins. Co.*, 570 F. Supp. 2d at 801. Similarly, the United Stated District Court for the Northern District of Oklahoma ruled on summary judgment that two claims were not related because the plaintiffs in the first action sought recovery based on the failure of the company's officers to release the plaintiffs from a loan guarantee, and the second action was brought by a bankruptcy trustee and focused on the poor management of the company without any reference to the loan agreement. *See Axis Surplus Ins. Co. v. Johnson*, No. 06-CV-500-GKF-PJC, 2008 WL 4525409, at *8–9 (N.D. Okla. Oct. 3, 2008).

Here, although the plaintiffs in the derivative actions and bankruptcy proceeding are not identical, Burks's evidence shows that they served a similar purpose and alleged similar facts and wrongful acts arising out of the same time period. The plan agent carried out the Chapter 11 plan, which provided that the agent had authority to pursue claims and avoidance actions for the benefit of the estate of Superior Offshore. Similarly, the plaintiffs in the derivative actions sued Burks on behalf of Superior Offshore. *See, e.g.*, *Richardson v. Newman*, 439 S.W.3d 538, 542 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (shareholder in derivative action asserts the corporation's claims against the directors). Both actions alleged that Superior Offshore gave compensation, bonuses, and benefits to

Burks while the company was in financial straits. Both actions sought disgorgement of his compensation, bonuses, and benefits from the same time period. Viewing this evidence in the light most favorable to Burks, he raised a fact issue as to whether the plan agent's complaint alleged wrongful acts that "in any way involv[ed] any of the same or related . . . facts, circumstances, situations, transactions, or events" alleged in the derivative actions.

Summary judgment on this ground was not proper.

## III.
### DEFENSE EXPENSES

XL argued in its summary judgment motion that it owed no duty under the policy to advance defense expenses because there was no possibility of coverage for the plan agent's claims, which sought disgorgement of ill-gotten gains that are not insurable under Texas law and therefore fall outside of the definition of "loss" contained in the policy. Under a plain reading of the policy, we hold that XL has failed to establish as a matter of law that XL owed no duty to advance defense expenses even if the plan agent's desired remedy of disgorgement was not insurable.[5]

The D&O policy provides that XL will pay Burks "**Loss** resulting from a **Claim**." The policy defined "loss" as "damages, judgments, settlements or other amounts . . . and **Defense Expenses** that the **Insured Persons** are obligated to

---

[5] Although neither party has cited any Texas authority holding that insurance for disgorgement is against public policy, Burks conceded before the trial court and this court that disgorgement for ill-gotten gains generally is "uninsurable under the law" of Texas. Given the strong policy in Texas favoring the right of parties to contract and the lack of any Texas authority holding that insuring against disgorgement is against public policy, we render no opinion on the matter. We assume without deciding that disgorgement is "uninsurable" in Texas.

pay," but "**Loss** will not include: . . . matters which are uninsurable under the law pursuant to which this Policy is construed."[6]

On appeal and in its summary judgment motion, XL cites to Texas cases that reiterate a familiar principle for insurance contracts that create a duty to defend: "An insurer has no duty to defend if a petition against an insured alleges facts excluded by the policy." *E.g.*, *Chapman v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 171 S.W.3d 222, 228 (Tex. App.—Houston [1st Dist.] 2005, no pet.). XL argues that it had no duty to pay Burks defense expenses because the plan agent's claim is excluded by the policy.

However, the D&O policy does not create a duty to defend. The policy expressly denies it: "It shall be the duty of the **Insured Persons** and not the duty of the Insurer to defend **Claims**." Rather, the D&O policy creates a duty to advance defense expenses: "Upon written request, the Insurer will pay on a current basis any **Defense Expenses** before the disposition of the **Claim** for which this Policy provides coverage." The policy allows XL to obtain Burks's guarantee to repay these defense expenses "if it is finally determined that the **Loss** incurred is not covered under this Policy." The policy further clarifies that defense expenses will be paid before the claim is adjudicated: "Except for such **Defense Expenses**, the Insurer shall pay **Loss** only upon the final disposition of any **Claim**." The policy similarly does not exclude defense expenses from other types of excluded loss that arguably applied to Burks's actions (an "ill-gotten gains" exclusion):

---

[6] The parties do not dispute that the plan agent's complaint fit the definition of "claim," which is broadly defined as "(1) a written demand for monetary or non-monetary relief; (2) any civil or criminal judicial proceeding in a court of law or equity, or arbitration; or (3) a formal civil, criminal, administrative, or regulatory proceeding or formal investigation against an **Insured Person**." The policy defined "defense expenses" as "reasonable legal fees and expenses incurred in the defense of any **Claim**."

13

*Except for **Defense Expenses***, the Insurer shall not pay **Loss** in connection with any **Claim**:

. . . .

(2) brought about or contributed to in fact by any:

(i) intentionally dishonest, fraudulent, or criminal act or omission or any willful violation of any statute, rule, or law; or

(ii) profit or remuneration gained by any **Insured Person** to which such **Insured Person** is not legally entitled;

as determined by a final determination in the underlying action.

(emphasis added). Thus, defense expenses are specifically excluded from the exclusion.

Under the unambiguous terms of the policy, XL agreed to advance defense expenses until it is "finally determined" the loss is not covered. The Fifth Circuit has interpreted similar language in a D&O policy to require the advancement of defense expenses until "it is determined" that that the insured engaged in money laundering. *See Pendergest-Holt*, 600 F.3d at 570, 574, 576 (noting that the insureds correctly argued that "mere allegations [of money laundering] are insufficient to bar coverage under the D&O Policy" for defense expenses, and noting that the policy contained a similar provision requiring repayment if it is determined the insured committed money laundering). To the extent there is any ambiguity, we must adopt Burks's interpretation. *See Gilbert Tex. Constr.*, 327 S.W.3d at 133.

XL cites no Texas case holding that an insurer has no duty to advance defense expenses when loss for the alleged wrongful act would not be covered itself.[7] There is authority to the contrary. *See Pendergest-Holt*, 600 F.3d at 570,

---

[7] XL cites two New York cases holding that defense expenses were not recoverable when the insureds settled with third-parties that had sought disgorgement. *See Vigilant Ins. Co. v.*

14

574; *see also Level 3 Commc'ns, Inc. v. Fed. Ins. Co.*, 272 F.3d 908, 911 (7th Cir. 2001) (noting that even if "loss" did not include disgorgement or restitution, an insured may suffer loss from incurring legal expenses to defend against a suit seeking restitution or disgorgement; "Those expenses would be a loss to the company not offset by any benefit to it, unlike the 'expense' that consists simply of the value of the stolen property, a wash."); *Starkville Mun. Separate Sch. Dist. v. Cont'l Cas. Co.*, 772 F.2d 168, 170 (5th Cir. 1985) (for a policy that defined "loss" to not include "matters which shall be deemed uninsurable under the law," costs and attorney's fees to defend against a plea for punitive damages were covered even though under Mississippi law punitive damages were uninsurable for reasons of public policy; reasoning that if the insurer "intended to exclude these other costs from the policy's coverage, it needed to do so more explicitly").

Accordingly, we hold that even if disgorgement is "uninsurable under the law" of Texas, XL has not established that this D&O policy excludes the advancement of expenses incurred for defending against such claims based solely on the definition of "loss." In his live petition, Burks sought to recover his defense expenses from XL. The trial court granted XL summary judgment on those defense expenses. Summary judgment on this ground was improper.

---

*Credit Suisse First Boston Corp.*, 10 A.D.3d 528 (N.Y. App. Div. 2004); *Millennium Partners, L.P. v. Select Ins. Co.*, 24 Misc. 3d 212 (N.Y. Sup. Ct. 2009). But in both of those cases, and unlike the situation here as discussed more fully below, the terms of the settlements were clear that the settlements were for ill-gotten gains. *See Vigilant Ins. Co.*, 10 A.D.3d at 529; *Millennium Partners*, 24 Misc. 3d at 217–18. Further, the *Vigilant Insurance* court acknowledged that an insurer may be required to advance defense costs, subject to repayment, which is exactly how we interpret the policy here: "While, under certain circumstances, the insurers must advance defense costs incurred by the insured in connection with a claim, the insured is obligated to repay such advance payments upon a finding that it is not entitled to payment of such Loss." *Vigilant Ins. Co.*, 10 A.D.3d at 529 (quotation omitted).

## IV.
### INDEMNIFICATION

Finally, XL contends that it had no duty to indemnify Burks for the settlement because it represents uninsurable disgorgement or restitution.[8] Burks contends that there is doubt (i.e., at least a fact issue) about whether the settlement represented disgorgement, and summary judgment is not appropriate.

A ***judgment*** ordering the repayment of a fraudulent transfer under the Bankruptcy Code may indicate that an insured has paid restitution or disgorgement. *See In re TransTexas Gas Corp.*, 597 F.3d 298, 310 (5th Cir. 2010). But Burks correctly notes that the mere fact of settlement does not indicate admission of the allegations in a complaint. *Cf., e.g.*, *City of Houston v. Sam P. Wallace & Co.*, 585 S.W.2d 669, 673 (Tex. 1979) (settlement agreements generally are not admissible because the jury may improperly view the settlement as an admission of liability). "[S]ettlement represents the parties' willingness to resolve the claims after weighing the negotiated settlement amount against the potential judgment amount and accounting for the costs and benefits of continued litigation." *U.S. Bank Nat'l Ass'n v. Indian Harbor Ins. Co.*, 68 F. Supp. 3d 1044, 1050 (D. Minn. 2014). "[T]he essential purpose of a settlement is to avoid adjudication of the lawfulness or propriety of conduct which is the subject of allegations of the complaint." *Alliance to End Repression v. City of Chicago*, 561 F. Supp. 537, 554 (N.D. Ill. 1982). "If a settlement resolves claims alleging

---

[8] As a threshold to making this argument, and in response to Burks's contrary position, XL contends it is not precluded from denying indemnity even if it breached the duty to advance defense expenses. We agree with XL; even Burks's authority supports XL's position. *See Tex. United Ins. Co. v. Burt Ford Enters., Inc.*, 703 S.W.2d 828, 833 (Tex. App.—Tyler 1986, no writ) (noting that the supreme court has held that "where an insurer refuses to tender a defense to its insured and denies coverage on a claim made against its insured, and the insured thereafter negotiates a settlement of the claim, the insurer is entitled to raise a policy defense of exclusion of coverage set forth in the policy").

16

unlawful activity but excludes an admission of liability for the activity, it does not establish that the underlying allegations are true or false." *U.S. Nat'l Ass'n*, 68 F. Supp. 3d at 1050. Accordingly, we "will not automatically presume . . . that the settlement constitutes restitution because it resolved claims alleging ill-gotten gains and seeking disgorgement of those gains." *Id.* (granting summary judgment to the insured after the insured settled allegations of disgorgement when the policy included a definition of loss and an ill-gotten-gains exclusion similar to the policy involved here).

The actual settlement agreement is not in the record; merely a stipulation of dismissal of the plan agent's complaint, which contains no admission of wrongdoing. And the plan agent sought more than merely disgorgement or restitution; the plan agent sough a "money judgment" and "attorney's fees" under TUFTA. Given that Burks settled these claims, there is necessarily a fact issue about whether the entire settlement amount represented disgorgement of ill-gotten gains. And we note that Burks testified by affidavit, attached in response to XL's motion for summary judgment, that Burks had "always maintained that [he] was legally entitled to the compensation owed [him] under [his] Employment Agreement and Separation Agreement with Superior." Viewing the evidence in the light most favorable to Burks, we cannot assume from this record that the settlement was for disgorgement and therefore uninsurable under the law of Texas.

As its only Texas authority on point, XL relies on the Dallas Court of Appeals' decision in *Nortex Oil & Gas Corp. v. Harbor Insurance Co.*, 456 S.W.2d 489 (Tex. Civ. App.—Dallas 1970, no pet.). The policy and facts of *Nortex* are vastly different and not persuasive when interpreting the policy here.

Some plaintiffs sued Nortex for conversion after Nortex allegedly slant-drilled and removed oil belonging to the plaintiffs. *Id.* at 490. Nortex settled and

17

demanded indemnification from its insurer under a policy that covered "damages, direct or consequential, and expenses, all as more fully defined by the term 'ultimate net loss', on account of personal injuries . . . and property damage." *Id.* at 491 & n.1. The term "ultimate net loss" was defined in relevant part as "the total sum which the Assured . . . becomes obligated to pay by reason of a Personal Injury or Property Damage Claims, either through adjudication or compromise." *Id.* at 491 n.1. The term "property damage" included "damage to or destruction or loss of property." *Id.*

The *Nortex* court did not hold that settlements for disgorgement, generally, are against public policy or "uninsurable" under Texas law. Instead, the court held that the plaintiffs' claims were "not claims for property damage within the meaning of the policy." *Id.* at 493. The *Nortex* policy, as quoted above, required that the total sum Nortex was obligated to pay through settlement was "by reason of a . . . Property Damage Claim[]." *Id.* at 491 n.1. Thus, the *Nortex* court was required to look at the claim alleged and determine whether it was for property damage, and therefore, whether the settlement was a covered loss. *Id.* at 494.

Here, the definition of "loss" in the D&O policy is not so limiting: "'**Loss**' means damages, judgments, settlements or other amounts (including punitive or exemplary damages, where insurable by law) and **Defense Expenses** that the Insured Persons are obligated to pay. Loss will not include: . . . matters which are uninsurable under the law pursuant to which this Policy is construed." Unlike in *Nortex*, "settlements" is not modified by a particular type of claim, such as "property damage," which can be ascertained by reference to the claims asserted in a plaintiff's petition or complaint. The settlement in *Nortex* was excluded because "loss" was defined by reference to the type of claim asserted—loss included "property damage" claims, not conversion claims.

18

Further, no Texas court has held that insuring a settlement of a claim seeking restitution or disgorgement is against public policy or otherwise generally "uninsurable under the law" of Texas; nor has the Legislature enacted any legislation on point. Under these circumstances, we cannot hold as a matter of law that the parties intended for a settlement such as this one to be excluded from coverage. *See U.S. Bank Nat'l Ass'n v. Indian Harbor Ins. Co.*, No. 12-cv-3175, 2014 WL 3012969, at *3 (D. Minn. July 3, 2014) (settlement for restitution was not "uninsurable" under Delaware law because no Delaware statute or case law expressly precluded insurance coverage for settlements of restitution). To the extent the Fifth Circuit in *In re TransTexas* understood *Nortex* as establishing a public policy in Texas against insuring settlements made in satisfaction of claims alleging ill-gotten gains, we disagree with that reading.[9]

Finally, XL suggests that it "can't be right" that a judgment for disgorgement is uninsurable while a settlement is not, quoting the Seventh Circuit. *See Level 3 Commc'ns, Inc. v. Fed. Ins. Co.*, 272 F.3d 908, 911 (7th Cir. 2001). Notwithstanding that the sweeping *Level 3* decision has never been cited as authority by a Texas court, even the Seventh Circuit acknowledged that not all settlements in satisfaction of claims alleging ill-gotten gains necessarily would be excluded from coverage. *See id.* at 912. It refused to decide and could find "no guidance" on whether an insured might argue that such a settlement could be covered with a showing that the third-party's allegations were groundless. *Id.* Here, unlike in *Level 3*, Burks has raised a fact issue on the nature of the

---

[9] The Fifth Circuit, relying on *Nortex* as its only Texas authority, held that a *judgment* "restitutionary in nature" is "uninsurable under Texas law." *In re TransTexas Gas Corp.*, 597 F.3d 298, 309–11 (5th Cir. 2010).

settlement, and he testified that he was legally entitled to the compensation that the plan agent sought.[10]

We discern a genuine issue of material fact on whether Burks's settlement was for disgorgement and therefore "uninsurable under the law" of Texas, and we find no Texas authority precluding coverage for such a settlement as a matter of law. Therefore, we hold that the trial court erred by granting summary judgment to XL on this ground.

## V.
### CONCLUSION

None of the grounds XL alleged in its motion for summary judgment on Burks's breach of contract claim is meritorious. Thus, we affirm the trial court's judgment on the non-contract claims, reverse the judgment as to the contract claim, and remand the case to the trial court for proceedings consistent with this opinion.

/s/    Sharon McCally
        Justice

Panel consists of Justices Boyce, McCally, and Donovan.

---

[10] The Seventh Circuit's apparent concern for adopting a different standard for judgments and settlements is also alleviated by the terms of XL's policy, which required Burks to not admit liability or make any settlement "without the Insurer's consent, such consent not to be unreasonably withheld." At least one court has suggested a similar clause obviates the concern over treating settlements differently because the insurer could "condition[] consent on an admission of liability for wrongdoing or a stipulation that the payment was restitution." *U.S. Bank Nat'l Ass'n*, 68 F. Supp. 3d at 1053. We do not now address whether Burks failed to comply with this condition, or whether Burks was relieved from doing so by XL's failure to advance defense expenses.

20